FILED
AUG 20 2019
U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 4:19CR676 AGF |
| v. ) | |
| ) | |
| ANTOINE ADEM, M.D., ) | |
| ) | |
| Defendant. ) | |

## INFORMATION

The Attorney for the United States charges:

### COUNT 1
### HEALTH CARE FRAUD SCHEME
### 18 U.S.C. §§ 1347(a)(1) and 2

#### Introduction

1. At all relevant times, Dr. Adem was a medical doctor licensed in the state of Missouri. Dr. Adem provided services to patients insured by Medicare, Medicaid, and private insurance companies.

2. At all relevant times, Midwest Cardiovascular, Inc. was a Missouri corporation. Dr. Adem has served as the president of Midwest Cardiovascular since its inception in 2008.

#### Relevant Medicare Provisions

3. The United States Department of Health and Human Services, through the Centers for Medicare and Medicaid Services (CMS), administers the Medicare Program, which is a federal health benefits program for the elderly and disabled. Medicare Part B reimburses health care providers for covered health services that they provide to Medicare beneficiaries in outpatient settings.

4. CMS acts through fiscal agents called Medicare Administrative Contractors or "MACs" which are statutory agents for CMS for Medicare Part B. The MACs are private entities that review claims and make payments to providers for services rendered to Medicare beneficiaries. The MACs are responsible for processing Medicare claims arising within their assigned geographic area, including determining whether the claim is for a covered service. Wisconsin Physicians Service Insurance Corporation (WPS) is the Part B MAC for Eastern Missouri and thus processes Dr. Adem's and Midwest Cardiovascular's claims for Medicare reimbursement.

5. To receive Medicare reimbursement, providers must make appropriate application to the MAC and execute a written provider agreement. The provider agreement obligates the provider to know, understand, and follow all Medicare regulations and rules. After successful completion of the application process, the MAC assigns the provider a unique provider number, which is a necessary identifier for billing purposes.

6. The Medicare provider enrollment application states, under section # 15 Certification Statement, items #7 and #8:

> I understand that the Medicare billing number issued to me can only be used by me or by a provider or supplier to whom I have reassigned my benefits under current Medicare regulations, when billing for services rendered by me. I will not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare, and will not submit claims with deliberate ignorance or reckless disregard of their truth or falsity.

7. Medicare providers must retain clinical records for the period required by State law or five years from date of discharge if there is no requirement in State law.

### Relevant Missouri Medicaid Provisions

8. MO HealthNet administers the Missouri Medicaid Program, which is jointly funded by the State of Missouri and the federal government. Missouri Medicaid reimburses

2

health care providers for covered services rendered to low-income Medicaid recipients.

9.  A Medicaid provider must enter into a written agreement with MO HealthNet to receive reimbursement for medical services to Medicaid recipients and must agree to abide by MO HealthNet's regulations in rendering and billing for those services. Included in the Missouri Medicaid provider agreement is the following language:

> By my signature below, I, the applying provider, have read and agree that, upon the acceptance of my enrollment, I will participate in the Vendor Payment plan for 20- Physician, MD AND DO Services. I am responsible for all services provided and all billing done under my provider number regardless to whom the reimbursement is paid. It is my legal responsibility to ensure that the proper billing code is used and indicate the length of time I actually spend providing services regardless to whom the reimbursement is paid. I agree to be financially responsible for all services, which are not documented. I agree the Missouri Title XIX Medicaid manual, bulletins, rules, regulations and amendments thereto shall govern and control my delivery of services and further agree to the following terms:
>
> I agree that it is my responsibility to access manual materials that are available from DMS over the Internet. I will comply with the Medicaid manual, bulletins, rules, and regulations as required by the Division of Medical Services and the United State Department of Health and Human Services in the delivery of services and merchandise and in submitting claims for payment. I understand that in my field of participation I am not entitled to Medicaid reimbursement if I fail to so comply, and that I can be terminated from the program for failure to comply.

10.  Medicaid providers must retain, for five years from the date of service, fiscal and medical records that reflect and fully document services billed to Medicaid, and must furnish or make the records available for inspection or audit by the Missouri Department of Social Services or its representative upon request. Failure to furnish, reveal, or retain adequate documentation for services billed to the Medicaid Program may result in recovery of the payments for those services not adequately documented and may result in sanctions to the provider's participation in the Medicaid Program. This policy continues to apply in the event of the provider's discontinuance as an actively participating Medicaid provider through the change of ownership

or any other circumstance.

### Current Procedural Terminology (CPT) Codes

11.     In presenting reimbursement claims to health insurance companies, health care providers use numeric codes, known as "CPT Codes," to describe the service they provide. The CPT codes are contained in the Physicians Current Procedural Terminology manual. The CPT manual is published by the American Medical Association (AMA) and its body of physicians of every specialty, who determine appropriate definitions for the codes. By submitting claims using these CPT codes, providers represent to the insurance companies and their patients that the services described by the codes were in fact provided.

12.     Reimbursement rates for the CPT codes are set through a fee schedule, which establishes the maximum amount that the provider will be paid for a given service, as identified by the CPT code.

13.     CPT code 37241 is the code used to report vascular embolization and occlusion, which is a minimally invasive procedure defined as the therapeutic introduction of various substances into circulation to occlude or block vessels either to arrest or prevent hemorrhaging; to devitalize a structure, tumor or organ by occluding its blood supply; or to reduce blood flow to an arteriovenous malformation.

### Fraud Scheme Related to Varicose Vein Procedures

14.     Medicare does not pay for the treatment of varicose veins for purely cosmetic purposes. However, Medicare will pay for the treatment of varicose veins when medically necessary. Surgical intervention, such as vascular embolization and occlusion, may be covered when conservative measures such as exercise, periodic leg elevation, weight loss, compressive therapy, and avoidance of prolonged immobility

prove unsuccessful.

15.    It was part of the scheme and artifice to defraud that Dr. Adem performed and billed for vascular embolization and occlusion ("vein procedures") on certain patients, without any prior conservative treatment for their varicose veins.

16.    It was further part of the scheme and artifice to defraud that Dr. Adem personally directed his employees to schedule two vein procedures to be performed on certain patients in one day. Dr. Adem's nurse, who was also his assistant during the surgery, used an office planner to note that both surgeries were to be performed on the same day. This information was also included in the electronic calendar and schedule that the office maintained. Further, the patient consent forms and all other documents related to the surgeries for these patients show that the two procedures were performed on the same day.

17.    Nonetheless, it was part of the scheme and artifice to defraud that Dr. Adem made hand-written notes that indicated that he had performed the vein procedures on two different dates. He gave these notes to his nurse/assistant, who had been present in the room during the surgery. The assistant then scanned Dr. Adem's hand-written notes into the electronic medical record (EMR), thus incorporating the false and fraudulent notes into the patients' permanent medical records.

18.    It was part of the scheme and artifice to defraud that Dr. Adem caused false and fraudulent reimbursement claims, reflecting vein procedures performed on two different days, to be submitted to Medicare and other insurers. As a result, Dr. Adem received about $2000 more than he would have received if he had informed Medicare and the other insurers that the two vein procedures were performed on the same day.

19. From January 2014 to December 2018, Dr. Adem and Midwest Cardiovascular submitted or caused to be submitted numerous false and fraudulent claims to Medicare and Medicaid. As a result of these fraudulent claims, Medicare paid Dr. Adem and Midwest Cardiovascular $149,199.00, more than they were entitled to receive.

20. On or about December 31, 2015, in the Eastern District of Missouri,

**ANTOINE ADEM, M.D.,**

the defendant herein, knowingly and willfully executed, and attempted to execute, the above described scheme and artifice to defraud a health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, that is, Dr. Adem submitted and caused Midwest Cardiovascular to submit to the Medicare Program a reimbursement claim wherein he falsely and fraudulently stated that he had performed a vascular embolization and occlusion procedure on Patient L.A. on December 29, 2015, when he knew no service had been provided.

All in violation of Title 18, United States Code, Sections 1347(a)(1) and 2.

Respectfully submitted,

CARRIE COSTANTIN
Attorney for the United States
Acting Under Authority
Conferred by 28 U.S.C. § 515

DOROTHY L. McMURTRY, #37727MO
Assistant United States Attorney
111 South 10th Street, Room 20.333
St. Louis, Missouri  63102
(314) 539-2200

UNITED STATES OF AMERICA )
EASTERN DIVISION )
EASTERN DISTRICT OF MISSOURI )

I, Dorothy L. McMurtry, Assistant United States Attorney for the Eastern District of Missouri, being duly sworn, do say that the foregoing information is true as I verily believe.

*Dorothy L. McMurtry*
DOROTHY L. McMURTRY, #37727MO

Subscribed and sworn to before me this __30__ day of July, 2019.

*Gregory Linhares*
CLERK, U.S. DISTRICT COURT

By: *Elizabeth Kirkland*
DEPUTY CLERK